Quraishi et al v Deputy Michael Anderson All right, mr. Lane good morning, and may it please the court this court in this case returns again to the events that happened in Ferguson in Johnson most recently the court addressed events on August 9th in white the court addressed events on August 11th and 12th in this case The court is pointed toward a single event a single act by a single officer That occurred on August 13th all in the same area along West Florissant in Ferguson, Missouri I'd like to emphasize three key legal principles today first is that the questions before us have to be addressed for the perspective of the officer that is from the perspective of this particular officer deputy Anderson second that the First Amendment claim requires that there be a showing the Motivation that is deputy Anderson was motivated In a way impermissible under the First Amendment and third that the evidence has to go to dr. Anderson as an individual as this court observed in Harlan section 1983 does not sanction tort by Association and the interaction of that particular principle with the question of motivation is it is important here in a statement of facts to support the motion for summary judgment The statement was made that officer the deputy Anderson acted because sergeant His sergeant instructed him to act the sergeant picked the time and the place of shooting the CS Cartridge in response there was a statement that claimed that that was controverted and that a full page of Controverted or statement as to why it's controverted all of which addresses the motivation of the sergeant nothing there addressed the motivation of Deputy Anderson the motivation of deputy Anderson remained on the summary judgment record simply that he was instructed by the sergeant To act at that time and place to Discharge that particular cartridge to that particular location at that moment So how did the district court get around that the district court said that there are? Conflicting statements about the conditions that were around deputy Anderson at that particular time nothing Specific about Anderson and where he was what he was doing, but just this question of whether you can doubt his credibility There's this court said in Smith v. Kilgore You may not stave off summary judgment armed only with the hope that the jury might disbelieve the witnesses testimony It's not about those cases generally apply though more to the non moving party The Supreme Court cases all apply to a plaintiff where the defendants move for summary judgment So we don't we don't accept the officers affidavit As the end as the facts rather we take what the district court found on this appeal, right? well Yeah, maybe there is some ambiguity in the summary judgment Standard review, but the district court did did I suppose say that there was some question about that There were disputes about what was going on at the time the district court did not specifically say there was any dispute about Deputy Anderson acting at the behest of his sergeant and the district court did not reach any conclusion about that Whether he should act or or whether the weather about his motivation other than Acting at the behest of the sergeant the sergeant that it was the sergeant's choice is Uncontroverted in this case and there is no evidence that Anderson himself chose the time Chose the place at which he should act it was the sergeant Let me interrupt you again. If you look at all the videos, it looks like an awfully calm a place an awfully calm area At that moment, yes Yes for sure and and the district court says a calm scene suddenly interrupted by gunfire and tear gas directly targeting planes that seems Accurate enough and it's what the district court says Surely that's a controverted surely that requires a trial well, it So so two different questions on the motivation question I don't see how that gets us to a trial Because that doesn't tell you anything about what sergeant or what deputy Anderson's motivation was The statement is that he acted because he was told by his sergeant to act. That's the motivation there is no evidence to support a claim that that there was some other motivation for him as Opposed to the sergeant or someone else, but you don't get to trial as the deputy Anderson on the First Amendment claim Unless you have some kind of evidence about him not just about other people but about him and it's not there But the district court is getting to I think does pertain to this question of whether there was a seizure Which of course is another question about whether it was reasonable And so the district court in essence is saying that deputy Anderson should have told his sergeant. No Because what was going on here was enough to put I guess a deputy Anderson on notice that his sergeant was wrong and in there what the district court really doesn't do is address this from the perception of Anderson and perception depends on a variety of things. It depends on what knowledge deputy Anderson had It depends on the location that deputy Anderson was in it depends on the conditions not just at that particular moment but the conditions that Came before that deputy Anderson presumably knew as this court addressed in white that there had been violence the night before just a couple of Walks away. He may have known as again The court said in white the right along this stretch of West Florissant There had been problems two nights before He was involved He was there during the day and he saw and there's no dispute here that he saw that things were thrown at Officers from between houses and side streets and these lights that are seen at this time that the round is Discharged are on one of those side streets. And so there's no dispute about that So the question then becomes okay since they when they get to this particular place There is that that he says that he perceived that things were coming from the direction of lights But they the district court says no the video doesn't show anything coming from those lights. Is that enough? to say to him that there is that it is that there is a clearly established right that you are going to violate if you follow the sergeant's orders and And you at this moment after the whole history of the afternoon and the evening leading up to this point If you look down the street and and this seems quiet down that particular street at that time It does seem that you have to look at this from his point of view as to what he had been doing When he knew that Orders to disperse had been issued again and again and again as they'd work their way down the street The district court says that just a few minutes before this particular before Deputy Anderson acted we have video just a few minutes It also we also know that in that period the lights were up That's on controverted and that there were people around the lights. In fact, one of the plaintiffs I think uses the term that people were hovering Around the lights the lights. There's there's no The lights were interfering with at least to some degree there may be a day can argue about to what degree they interfered with the view of the officers But at least to some degree they were interfering with the view of the officers And so the question again becomes when when sir when deputy Anderson gets this order when he gets to this particular Corridor having walked up this street and having had one of his colleagues injured by something was thrown Having seen other things thrown as they come up the street from between houses and from side streets When he looks down the street and sees the lights at the time that he's told to to fire this round Should he have told his sergeant? No I'm not going to do that and if you look at what it is that the plaintiffs say about the reason that That he should have known that this was just pressed down there and he shouldn't have done it Well, the first thing they point to our reports after the fact saying oh, it was the press There was these three plaintiffs who were there that's post hoc That doesn't tell you anything about what deputy Anderson knew you have the statement that on top of the SWAT vehicle There were individuals who had an uninterrupted sight line to where these three plaintiffs stood But you have nothing to tie that deputy Anderson Nothing to suggest that the Anderson was one of the people on top of that vehicle nothing to suggest that anyone told deputy Anderson That I was on top of the vehicle and this is what I saw you have no connection between that and deputy Anderson And then you have the statement their third point one two, three Their third point is that the plaintiffs yelled out they were the press but you have neither Video nor any testimony from anyone around Officer or deputy Anderson saying that they heard this you have no video in which you can hear that That quote yelling or shouting and so you really have known of none of these bases To tell you that officer Anderson do anything more than he's gotten instruction He sees the lights their difficulty in seeing who's behind the lights He knew that elsewhere as they came up the street There were people throwing things at them when he got that instruction. He had sufficient Information that he had at least Arguable probable cause that he could act upon in order to to comply with the instruction that he'd been given His perception was that there was a threat that was a reasonable perception Given the information the knowledge that he had at that particular time Knowledge that is his knowledge No, it's not enough to say that all the rest of this happened. I find it interesting that players want to ignore everything that had happened along the streets that As as the officer came up all of this history of people throwing things and an officer being injured What they want to do instead is to pull out two incidents over the course of the day and say those show That police were targeting the press. They can't tie those incidents to deputy Anderson They can't to make any connection there at all But they think you ought to take their things They are the things to help them out of the course of what was happening during the day But you should ignore what was happening during the day into the evening as night fell when you're considering the position of deputy Anderson the sole defendant remaining in this case The court should reverse the decision of the district court and and instead I provide Say that deputy Anderson there is not sufficient record in in this summary judgment record to impose I heard to take deputy Anderson trial. Thank you. Mr. Mr. Layton, but you respond or Answer about the district courts conclusion that there that the facts don't indicate that there was any dispersal warning Given that would have applied to the plaintiffs in this case to put them on notice that they're at They needed to leave before CES I I don't think that the district court goes quite that far the district court says that in the period covered by the by the video Which is just a few minutes before? The the moment of which this part this round is fired There is no dispersal order the the bit the videos do show that earlier in the day. There were dispersal orders It seems apparent that there were loudspeakers being used along West Florissant There is no evidence to definitively show that that at the particular point These folks are on high month that they couldn't hear those orders So it seems it seems at least arguably reasonable for a deputy Anderson to conclude that they could be heard even at 300 feet away given the What he experienced before but you're right in those few Minutes It's happened. There was no disapproval over according to the video. Thank you Thank you All right May please the court the county's argument file fails for the lack of an s You heard mr. Layton repeatedly talk about the video Mr. Layton ignores the videos plural He says you have to focus The Interest to know Anderson only because deputy Anderson was accompanied by a medic the entire March up West Florissant Avenue Brandon Jones video, which is an exhibit in this case Runs uninterrupted from when the officers left where the riots were. I don't I don't doubt I don't dispute that there was a riot It was Commercial area The video of Brandon Jones Uninterrupted from there and they march up West Florissant until they get to highmont, which is where my clients were parked that video never once records any announcement to disperse that video never once Shows a rock shows a bottle or shows even a bird flying by That's the perspective of the deputy Anderson because the medic was with the SWAT team West Florissant Avenue, but there's more that video also records Brandon Jones the medic attending to Dwayne Matthews when you go back and watch the video of Brandon Jones 104 Dwayne Matthews is the young black man who's in the ditch who's being pulled out who by the way Contrary to mr. Layton's view that white Cleared everybody of incidents that happened the actual decision and white found that Dwayne Matthews had a cognizable 1983 claim for officers beating him in the ditch on West Florissant Avenue on August 13 Oh There had been riots before so oh, it's okay to beat a man up because there have been riots before this court said No, you have to make a particularized finding and here there was this question of fact as to whether Dwayne Matthews was beat up by those officers that Brandon Jones attended to and While he said while Brandon Jones is attending to Dwayne Matthews at exactly eight minutes and 12 seconds into the video You may have you may have to play this in slow motion. You may have to download the QuickTime player so you can use frame by frame But at eight minutes of seconds into that video of Brandon Jones on the right-hand side of the screen You will see the tear gas round leave the gun of deputy Anderson. That's how close Brandon Jones was to deputy Anderson and there are no rocks. There are no bottles. There's no order to disperse There's nothing but the firing of a tear gas at this crew, but there's more There's some of the fault lines veterinary crew on the northeast corner of West Florissant and Highmont that crew Watch that video that crew follows the St. Louis County SWAT team and the St. Charles County SWAT team up West Florissant from where the riots were the quarter of a mile till they got to Highmont There's no announcement. There's no rocks. There's no bottles If a tree falls on the wood and no one hears it does it make a sound We know there was no sound Because we have the audio in Jones By the way, if you watch video 95 back during the day back in the commercial area You unquestionably hear Brandon Jones recording of the orders to disperse. So we know is his camera works We know it can record audio of an order to disperse, but because he recorded it in his tape 95 But his video 90 104 all the way into the march up and all the way at Highmont capturing the shooting of the tear gas And it's before minutes after there's no announcement at all from the LRAD The LRAD is that's an act 144 the officer who operated the LRAD LRAD is an acronym that stands for long range acoustic device If a long-range Acoustic device is used for the public address, which is what the officer says on app 144 Somebody surely is going to capture it on their audio. The medic didn't the fault lines crew didn't What you have on the Crew is the paradigm the excited utterance You have a documentary crew Literally seeing this tear gas round fired at my clients and you hear this experienced trained journalist say I Have no idea What they're firing at well counsel Let me pick up on you at that point if I may interrupt you and ask you a simple question Under our Johnson in bank case. You've got no Fourth Amendment claim here period right now Absolutely not because in Johnson the question was get on the sidewalk or get off the street You could continue You could continue moving. You just had to move on to the street here We were moved away from where we want to be There we had set this up You know, I got a tip from the clerk's office for today's virtual oral argument and it told me to make sure I didn't have a distracting background Utterly fascinating because the record in this case shows that our clients selected this position Specifically because it wasn't going to be anywhere that they were going to be interrupted They wanted a clean background they had to hook all their equipment up to their car they had to live Let me interrupt you again. You've made this into a great free press claim That's why they had it to be a great press and do an effective job You're doing a great job on that but fourth amendment requires a secret under the Johnson case Where you could go anywhere when you leave there's no seizure. I know there's a circuit split We've read the dissent, of course in that case, but but let me let me finish your question, especially on video So so so please take your time. Mr. Rhoades and And and just tell us how they were seized when they could go anywhere and candidly You know when you watch your videos your videos are good. But when you watch your videos, it looks like they couldn't go Anywhere and shortly they'll come back there Well, I Could be any Today and would you have this argument? No I would be seized if I was told I could not come in this room to make this argument But let's say we're in the real courtroom and there's a US marshal standing outside the door and it's my turn My case is called and I want to come in and the officer says doors locked. You can't go you can leave anywhere You can go to McDonald's and have breakfast. I don't care but you're not coming in my courtroom I've been seized because my freedom of movement has been inhibited and that's what the rule says what Johnson said was His freedom of movement was not inhibited. He could move he might have to take a little detour, but he couldn't move That's the difference. That's why this case is not controlled at all By Johnson because the what the place I wanted to move I Prohibited I wanted to be there. I set my equipment up I had this background specifically so that I wouldn't be disturbed because there weren't any riots there and I was Prohibited that for the very purpose of preventing me from carrying on my duties Now mr. Layton says of it That we What the sergeant or what deputy Emerson said Causation is a question of fact in this court Peterson verse cop decision. No pun intended KO PP the the court says and this is a case in which a Pepper spray is used on a compliance suspect After he said I want your badge number exercise Amendment right the court says the causal connection is generally a jury question cops pepper spray Is a reasonable reaction to an escalated situation Taking the evidence of light most favorable to Peterson as we must for the summary judgment analysis He's presented affirmative evidence that cop pepper spray to been retaliation for criticizing him and asking for his badge number That that was well accepted in 2011 when that Happened in the So what you have Is the court all of this roads a cop case is pre are in bank decision, right? I'm sorry is pre that the cop Peterson versus cop is a 2014 case on facts of 2011 It predates are in bank decision Yes, it does yeah, yes, you you you're correct it does but I don't think that has anything to do with the causation issues That's what that's what I'm that's what I'm citing. I'm sorry. I had moved on your I Moved on to to to mr. Lane's first amendment causation issue. I Did not intend to suggest that I was still aggressive. I think I've made my point in Johnson I believe that you are not see that you are seized if you are Forcibly prohibited from continuing on the path you want to take and I think that's why Johnson is different the the other arguments that Mr. Layton made was there some ambiguity in the district courts finding. I don't believe there's any ambiguity She goes through the record at length. She explains what not only the video You know in this case the videos are the icing on my cake I don't need the videos There would have been sufficient questions of fact to deny summary judgment without the videos because I have the sworn testimony of my three clients of a reporter for KSDK Who was? 200 feet away Had a corner from us on an opposite intersection who said there were no announcements there are no rocks There were no bottles. There was no crimes being occurred I have the affidavit of the documentarian who's a hundred less than a hundred feet away from deputy Anderson Saying there were no rocks. There were no bottles. There were no orders So the videos of my instance are just icing on the cake. I've got the cake. I've got questions of fact Based solely upon the evidence and what judge Scalia said in the Harris case is not revolutionary All he said is where the video shows that the facts are Uncontradicted You can't have an affiant make something up to create an issue of fact Well, there's no way. Mr. Layton can establish that the facts show that any of the affiance made things up Mr. Layton has to show that Mr. Mr. Mr. Rhodes, of course, that's for jurors. So let me direct you back to this. Would you address would you address? Mr. Layton's theme at the first that We just got one defendant here and he was just following orders Nuremberg It's not a United States Supreme Court decision. Mr. Rhodes. I'll counsel you that go ahead But I'm saying the facts established here that deputy Anders said Had reason to believe that this was illegal First of all as mr. Layton concedes two other officers put in their report that these were TV lights Now, mr. Layton says well, they did those report afterwards Of course, they did those report afterwards, but we don't know what they meant by that I think clearly the faith that the inference in favor of the plaintiffs is that they knew they were TV lights We have the fact that after the rubber bullet was shot at my clients They yelled and it's recorded on video. No one's no one's claiming. It didn't happen. Hey, we're the press here They were hit by the spotlight yet. Deputy Anderson continued. We also have deputy Anderson. Let let me just be frank Our evidence at trial will be the deputy Anderson is a liar Deputy Anderson said there were rocks being thrown at me from the intersection of West Florissant and Highmont Did I know that was your theme counsel, but? Counsel, I know that was your theme, but I serve on courts where they don't let lawyers use that term liar They considered almost an ethical violation and justice Ginsburg speaking of her justice Ginsburg said in interviews with With the editor of Black's Law Dictionary that you cite Justice Ginsburg said that she always tried to reprimand lawyers if they attack the other counsel their clients or the lower court So I thought your use of that was on the edge I know it's your theme, but I do you need it to call people liars? I don't need it and I and I apologize your honor, but my point is His credibility is not only at stake because he makes affirmative statements which are disproved But more importantly he never says once in his affidavit that I did not know these were members of the media He never says I never heard the plaintiffs say we're not members of the media All he says is I that the lights were there and I couldn't tell exactly who was there Combine that with what we say our credibility challenges. Is that better judgment? I Think we've established something for a jury therefore we ask you to affirm the trial courts decision. Thank you Am I unmuted I Was the one that wasn't a minute Thank you, I just be sure I'm communicating I will limit myself to just the observation that Judge Benton said if there's no seizure then many of these facts are irrelevant and then this statement No matter how many videos you watch you will not find anything that ascribes a motivation to deputy Anderson and With that unless there are further questions. Thank you